[No. S060863. Jan. 12, 1998.]

Estate of LOUIS JOSEPH, Deceased.
KIM BARNUM-SMITH, Petitioner and Appellant, v.
JAMES C. JOSEPH, Objector and Respondent.

COUNSEL

Thomas V. Roland for Petitioner and Appellant.

Dena R. Thaler and Kathleen Marie Moura for Objector and Respondent.

OPINION

MOSK, J.—Pursuant to section 6400 et seq. of the Probate Code, the estate of a deceased parent may pass by intestate succession to his child as heir. For these purposes, the code defines the relationship of parent and child to exist in three situations. First, section 6450, subdivision (a), provides that the "relationship of parent and child exists between a person and the person's natural parents, regardless of the marital status of the natural parents." Second, section 6450, subdivision (b), provides that the "relationship of parent and child exists between an adopted person and the person's adopting parent or parents." Third, section 6454—with which we are here concerned —provides that the "relationship of parent and child exists between [a] person and the person's foster parent or stepparent if" "(a) [t]he relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent," and "(b) [i]t is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." Thus, this provision contains what may be called a "continuing relationship" requirement: the relationship must have continued from minority until death. It also

contains what may be called a "legal barrier" requirement: A legal barrier must have been the necessary cause of the failure to adopt.

We granted review in this proceeding in order to resolve a conflict in the Courts of Appeal respecting the meaning of Probate Code section 6454. In *Estate of Stevenson* (1992) 11 Cal.App.4th 852 [14 Cal.Rptr.2d 250] (hereafter sometimes *Stevenson*), the Sixth Appellate District held, in substance, that what would become section 6454 allows the legal barrier or barriers to adoption of the foster child or stepchild by the foster parent or stepparent to have existed only at a time at which adoption was contemplated or attempted. In *Estate of Cleveland* (1993) 17 Cal.App.4th 1700 [22 Cal.Rptr.2d 590] (hereafter sometimes *Cleveland*), Division Five of the Second Appellate District, declining to follow *Stevenson*, held, in substance, that what would become the provision requires that the legal barrier or barriers to adoption must have continued until death. As we shall explain, we conclude that the *Cleveland* court was right and the *Stevenson* court was wrong.

I

Petitioner, Kim Barnum-Smith, asked the Probate Department of the Superior Court of Alameda County for letters of administration of the estate of decedent, Louis Joseph, who died intestate, and was subsequently issued such letters of administration.

Thereupon, petitioner asked the probate court for a determination that she was decedent's daughter pursuant to Probate Code section 6454 and his sole heir, and that, as such, she was entitled to distribution of his estate in its entirety. Objector, James C. Joseph, who was decedent's brother, opposed.

After trial, the probate court determined that petitioner was not decedent's daughter or heir and, hence, was not entitled to distribution of his estate in any part. It also revoked her letters of administration of decedent's estate and removed her from office, concluding that, because she was not an heir, she did not have a priority to serve over others, including objector.

In issuing orders to this effect, the probate court rendered a statement of decision, which included the following.

Petitioner "was taken in by" decedent and his wife, who predeceased him, "and [was] raised by them during the vast period of her minority, from age three on. [They] assisted her after her minority by financing her efforts at San Jose State University and a local junior college. [Decedent] 'gave' [her] away at her wedding. Certainly, the relationship between [decedent and his

wife and petitioner] satisfied the common law definition of 'foster child[,]' at least during the minority and early adulthood of [petitioner], which to simplistically recite [its] shorthand definition means one whose well being is fostered by another person. For a period, at the beginning of the relationship, and during her minority[,] both [decedent and his wife] would from time to time ask [petitioner's] natural parents if they . . . could adopt [her]. Each such request was refused. After a while, but still during [her] minority [they] discontinued asking.

"The real problem presented by this case is concluding the legislative meaning of, and the purpose for, the requirement of Probate Code [section] 6454 when it requires that there be '. . . clear and convincing evidence that the foster parent . . . *would have adopted the [foster child] but for a legal barrier.*' ([E]mphasis added[.]) Only two cases have surfaced which address themselves to Probate Code [section] 6454 and they specifically address themselves to the above mentioned ['legal barrier'] requirement. They are: *Estate of Stevenson* (1991) 11 Cal.App.4th [852,] and *Estate of Cleveland* (1993) 17 Cal.App.4th [1700]. These decisions are diametrically opposite one to the other.

"This court is impressed with the logic, analysis and scholarship of *Cleveland* . . . . The *Cleveland* Court carefully analyzed the legislative history of this novel reform to the law of intestate succession and concluded that [section] 6454's ['legal barrier'] requirement means what it says and says what it means. The public policy reasons for the enactment of [section] 6454 are satisfied by the *Cleveland* Court's decision and it appears to this court that *Stevenson* . . . goes well beyond the intent of the legislation in [its] conclusion.

"Factually, in this case [decedent], the last to die of the [spouses], could have pursued an adult adoption had he really wanted to establish a parent/child relationship with [petitioner]. Additionally, he could have written a will leaving his property to [her] had he intended for her to succeed to his property. (He clearly was aware of the benefits of the use of a will, as he used the services of the [l]awyer who now represents [petitioner] to write a will many years before his death.) We cannot know what [decedent's] intentions were regarding the devolution of his estate, except as he expressed them as to his predeceased spouse when he wrote his will. Although it is not an insignificant fact that he did not express any testamentary intent toward [petitioner] as a successor beneficiary should, as actually happened, his wife have predeceased him. *Cleveland* . . . envisioned just such a case as this when it recognized that any number of reasons could exist for not wanting a 'foster child' to succeed to one's property including loss of affection,

disappointment, favoring relatives, dissatisfaction with the choice of the 'foster child's' spouse, to name but a few. In this case [petitioner] obtained her majority age on October 15, 1974, some twenty one years before [decedent's] death. Surely, that passage of time cannot be ignored. . . . [Decedent and his wife] during their life had ample opportunity to control the outcome and *for what ever* [*sic*] *reason* chose not to. To conclude that [decedent] wanted [petitioner] to inherit his property is presumptuous and not consistent with the Legislature's reasons for enactment of § 6454.

"Therefore, it is the ruling of this court that the provisions of Probate Code [section] 6454 have not been satisfied by the relationship between [petitioner] and [decedent, and] that she has [not] shown by clear and convincing evidence that [he] would have adopted [her] but for a legal barrier." (Original italics.)

From the probate court's orders, petitioner appealed to the First Appellate District of the Court of Appeal. She proceeded without a reporter's or clerk's transcript, electing to prepare an appendix in lieu of the latter. She did so, as she would later explain, "[b]ecause the material facts," as disclosed in the probate court's statement of decision, "are undisputed."

In an opinion certified for publication, Division Three of the First Appellate District, to which the cause was assigned, unanimously affirmed the probate court's orders. All but expressly applying the standard of independent review, and following *Cleveland* instead of *Stevenson*, it agreed with the implied conclusion that Probate Code section 6454 requires that the legal barrier or barriers to adoption of the foster child or stepchild by the foster parent or stepparent must have begun during the foster child or stepchild's minority, and must have continued throughout the joint lifetimes of the foster child or stepchild and the foster parent or stepparent. Impliedly using what appears to be the substantial evidence test, it sustained the express finding that petitioner failed to establish by clear and convincing evidence that decedent would have adopted her but for a legal barrier: Under the provision, a legal barrier to adoption had to have continued until death; she admitted, however, that such a barrier did not perdure.

At petitioner's request, we granted review. We now affirm.

II

In 1931, the Legislature enacted the original Probate Code. (Stats. 1931, ch. 281, p. 587 et seq.) It incorporated therein the substance of provisions from the Civil Code, the Code of Civil Procedure, and two uncodified

statutes, and then repealed the provisions in question. (*Evans* v. *Superior Court* (1932) 215 Cal. 58, 61 [8 P.2d 467].)

In 1980, the Legislature directed the California Law Revision Commission (hereafter the Law Revision Commission or simply the commission) to study, among other topics, "[w]hether the California Probate Code should be revised, including but not limited to whether California should adopt, in whole or in part, the Uniform Probate Code . . . ." (Assem. Conc. Res. No. 107, Stats. 1980 (1979-1980 Reg. Sess.) res. ch. 37, p. 5086.)

In the course of its study over the years that followed, the Law Revision Commission submitted various recommendations to the Legislature to revise the original Probate Code in various ways, some in line with the Uniform Probate Code, some not.

So far as the law of intestate succession was concerned, the Law Revision Commission had as its purpose to "provide" new "rules," framed in light of "changes in the American family and in public attitudes," "that are more likely" than the old ones "to carry out . . . the intent a decedent without a will is most likely to have had," evidently at the time of death, and to do so in a "more efficient and expeditious" manner. (Tent. Recommendation Relating to Wills and Intestate Succession (Nov. 1982) 16 Cal. Law Revision Com. Rep. (1982) pp. 2318, 2319.) From all that appears, the Legislature had the same purpose. (*Estate of Cleveland, supra*, 17 Cal.App.4th at p. 1706.)

In 1983, the Legislature added section 6408 to the Probate Code. (Stats. 1983, ch. 842, § 55, pp. 3083-3084.)

Probate Code section 6408, subdivision (a)(2), provided: "The relationship of parent and child exists between an adopted person and his or her adopting parent or parents. The relationship between a person and his or her foster parent, and between a person and his or her stepparent, has the same effect as if it were an adoptive relationship if (i) the relationship began during the person's minority and continued throughout the parties' joint lifetimes and (ii) it is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." (Stats. 1983, ch. 842, § 55, p. 3083.) One such legal barrier exists "where . . . a parent of the" "foster child or stepchild" "refuses to consent to the adoption." (Sen. Com. on Judiciary, Rep. on Assem. Bill Nos. 25 & 68 (1983-1984 Reg. Sess.) 3 Sen. J. (1983-1984 Reg. Sess.) p. 4882 (hereafter Senate Committee on Judiciary Report).)

Probate Code section 6408, subdivision (a)(2), was new to California law. (Sen. Committee on Judiciary Rep., *supra*, 3 Sen. J. (1983-1984 Reg. Sess.)

p. 4882; see *Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1704; *Estate of Claffey* (1989) 209 Cal.App.3d 254, 256 [257 Cal.Rptr. 197].) Moreover, it appears to have been, and to have remained, unique to this state among American jurisdictions. (Meadow & Loeb, *Heirs Unapparent* (June 1994) L.A.Law. 34, 38; Note, *Intestate Succession for Stepchildren: California Leads the Way, but Has It Gone Far Enough?* (1995) 47 Hastings L.J. 257, 260 [speaking only of stepparents and stepchildren]; Mahoney, *Stepfamilies in the Law of Intestate Succession and Wills* (1989) 22 U.C. Davis L.Rev. 917, 929 [same]; see *Estate of Cleveland, supra,* 17 Cal.App.4th at pp. 1704-1705, fn. 6; see also 8 West's U. Laws Ann. (1983) U. Prob. Code (1969) § 2-109, pp. 66-67 [making no provision for foster parents and foster children or stepparents and stepchildren]; cf. *id.,* § 1-201(3), p. 30 [excluding from the definition of a "child," in pertinent part, "any person who is only a stepchild . . . [or] a foster child"]; *id.* (1997 supp.) § 1-201(5), p. 12 (1990 rev.) [same]; former Prob. Code, § 26, added by Stats. 1983, ch. 842, § 21, p. 3026 [same]; *id.,* as amended by Stats. 1984, ch. 892, § 4, p. 2988 [deleting the exclusion]; but see *Estate of Claffey, supra,* 209 Cal.App.3d at p. 256 [stating, incorrectly, that this "innovative portion" was "adapted from the Uniform Probate Code"].)

Probate Code section 6408, subdivision (a)(2), was proposed to the Legislature by the Law Revision Commission. It was not submitted as a recommendation originally. (Tent. Recommendation Relating to Wills and Intestate Succession, *supra,* 16 Cal. Law Revision Com. Rep. (1982) at pp. 2459-2460; see *id.* at p. 2460 [Law Revision Com. com. on Prob. Code, § 6408: "[a] person who is only a stepchild [or a] foster child . . . is not a 'child[,]' " and "[a] person who is only a stepparent [or a] foster parent . . . is not a 'parent[]' "]; see generally, *Estate of Claffey, supra,* 209 Cal.App.3d at p. 258; *Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1705 [following *Claffey*].) It came later. (*Estate of Claffey, supra,* 209 Cal.App.3d at p. 258; *Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1705 [following Claffey].) It evidently found its source in the notes of one of the commission's expert consultants, who drafted language that was virtually identical to what would subsequently be enacted, in order "to provide for step- and foster children in very limited situations, with the necessary safeguards incorporated by treating the case like an adoption, for which qualifications, exceptions, etc. are elsewhere worked out."[1]

In 1984, the Legislature redesignated the pertinent part of Probate Code section 6408, subdivision (a)(2), quoted above, as subdivision (a)(3), with

---

[1]Petitioner requests us to take judicial notice of the records of the Law Revision Commission containing the language quoted in the text, specifically, a two-page document entitled "March '83 ECH—Notes." (The initials evidently refer to the notes' author, who was apparently Professor Edward C. Halbach, Jr.) We hereby grant the request. We must, of course, judicially notice California statutory law. (Evid. Code, § 451, subd. (a).) We may also judicially notice matters underlying such law. (E.g., *Schmidt* v. *Southern Cal. Rapid Transit*

virtually no change in language and absolutely no change in substance. (Stats. 1984, ch. 892, § 41.5, p. 3000.)[2]

In 1985, the Legislature redesignated Probate Code section 6408, subdivision (a)(3), as subdivision (b), with some change in language, to cause the provision to stand alone without reference to the one dealing with the adoptive relationship, but with no change in substance. (Stats. 1985, ch. 982, § 21, p. 3118.)[3]

In 1990, the Legislature repealed the original Probate Code, as amended (Stats. 1990, ch. 79, § 13, p. 463), and enacted a new one (Stats. 1990, ch. 79, § 14, p. 463 et seq.), which remains in effect today. In so doing, it repealed former Probate Code section 6408, subdivision (b) (Stats. 1990, ch. 79, § 13, p. 463), and enacted a new Probate Code section 6408, subdivision (e), which was identical thereto (Stats. 1990, ch. 79, § 14, p. 722). (See Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) pp. 1468-1471.)

In 1993, the Legislature repealed Probate Code section 6408, including subdivision (e) (Stats. 1993, ch. 529, § 4), and added section 6454 (Stats. 1993, ch. 529, § 5), which continues the substance of section 6408 in its present form (Annual Rep. for 1993 (1993) 23 Cal. Law Revision Com. Rep. (1993) p. 1006): "[T]he relationship of parent and child exists between [a] person and the person's foster parent or stepparent if" "(a) [t]he relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent," and "(b) [i]t is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." (Stats. 1993, ch. 529, § 5.)

After review, we believe—like the *Cleveland* court and unlike the *Stevenson* court—that Probate Code section 6454 should be read to require

---

*Dist.* (1993) 14 Cal.App.4th 23, 30, fn. 10 [17 Cal.Rptr.2d 340].) Including, to our mind, the commission records here. We note in passing that the language quoted in the text has been quoted in prior decisions. (*Estate of Claffey, supra,* 209 Cal.App.3d at p. 258; see *Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1705 [quoting *Claffey*'s quotation].)

[2]"The relationship between a person and his or her foster parent or stepparent has the same effect as if it were an adoptive relationship if (A) the relationship began during the person's minority and continued throughout the parties' joint lifetimes and (B) it is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." (Stats. 1984, ch. 892, § 41.5, p. 3000.)

[3]"[T]he relationship of parent and child exists between [a] person and his or her foster parent or stepparent if (1) the relationship began during the person's minority and continued throughout the parties' joint lifetimes and (2) it is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." (Stats. 1985, ch. 942, § 21, p. 3118.)

that the legal barrier or barriers to adoption of the foster child or stepchild by the foster parent or stepparent must have begun during the foster child or stepchild's minority, and must have continued throughout the joint lifetimes of the foster child or stepchild and the foster parent or stepparent, and that the provision should not be read to allow such barrier or barriers to have existed only at a time at which adoption was contemplated or attempted.

Our reading of Probate Code section 6454 is consistent with the words that it uses. It is easy to conclude that the provision's "legal barrier" requirement mandates that a legal barrier to adoption must have continued until death[4] —and also mandates, by implication, that an intent to adopt must have continued as well. If a legal barrier to adoption did not continue, it *could not* continue to be the necessary cause of the failure to adopt: it could not operate when it was not effective. If a legal barrier to adoption did not continue *together with an intent to adopt*, it *did not* continue to be the necessary cause of the failure to adopt: it may not be said to have prevented what was not even undertaken. By contrast, it is hard to conclude that the provision's "legal barrier" requirement allows a legal barrier to adoption to have existed only at a time at which adoption was contemplated or attempted. If a barrier of this sort existed only at some such moment, perhaps ephemerally in the far distant past, it was not a necessary cause of the failure to adopt at any of the others. The "legal barrier" requirement is, "but for a legal barrier" to adoption, "the foster parent or stepparent would have adopted" the foster child or stepchild. (Prob. Code, § 6454, subd. (b).) It is *not*, "but for a legal barrier" to adoption *at a time at which adoption was contemplated or attempted*, "the foster parent or stepparent would have adopted" the foster child or stepchild *at that time*.

Our reading of Probate Code section 6454 also suits the purpose that underlies the code generally, that is, to pass the estate of an intestate decedent in accordance with the "intent" that he "is most likely to have had" at the time of death, and to do so in an "efficient and expeditious" manner. (Tent. Recommendation Relating to Wills and Intestate Succession, *supra*, 16 Cal. Law Revision Com. Rep. (1982) at p. 2319.)

Specifically, our reading of Probate Code section 6454 serves the passing of the estate of an intestate foster parent or stepparent in accordance with his likely intent at the time of death. It is easy to conclude that, had he made a will, the foster parent or stepparent would have desired to dispose of at least some of his property to his foster child or stepchild if a legal barrier to

---

[4] Or at least until such point in time prior to death as to amount to a *factual* barrier to adoption in the period remaining. (See *Estate of Cleveland, supra,* 17 Cal.App.4th at pp. 1711-1712.)

adoption had continued until death together with an intent to adopt. In such a case, the failure to adopt would not imply the nonexistence of a parent-child relationship: it would be coterminous with the inability to adopt because of law. There would then be a kind of parent-child relationship that would be tantamount to that of adoption: not only would a legal barrier to adoption have continued until death, an intent to adopt would have continued as well. By contrast, it is hard to conclude that, had he made a will, the foster parent or stepparent would have desired to dispose of any of his property to his foster child or stepchild if a legal barrier to adoption had existed only at a time at which adoption was contemplated or attempted. In such a case, the failure to adopt at some such moment would not imply the existence of a parent-child relationship at any of the others: it would not be preceded or succeeded by the inability to adopt because of law. When that moment was years or even decades before death, it would signify that what might once have approached a parent-child relationship, to quote the *Cleveland* court, might well have suffered a "change in [its] nature or quality" in the interim. (*Estate of Cleveland, supra*, 17 Cal.App.4th at p. 1710.) True, at death, the foster child or stepchild might been have a friend to the foster parent or stepparent. But a friend, as such, is not an heir. The result of all this may indeed be that a parent-child relationship will be deemed to exist only in exceptional circumstances. That, however, does not seem to be against the provision's design, but rather in conformity therewith.

Our reading of Probate Code section 6454 also serves the passing of the estate of an intestate foster parent or stepparent efficiently and expeditiously. To quote the *Cleveland* court again, it "injects a strong dose of certainty into" such matters. (*Estate of Cleveland, supra*, 17 Cal.App.4th at p. 1712.) The provision's mandate that a legal barrier to adoption must have continued until death, together with an intent to adopt, eliminates, or at least reduces, marginal claims, whether genuine or sham, based on little more than an assertion that such a barrier existed only at a time at which adoption was contemplated or attempted. Otherwise, as the *Cleveland* court explained, there might be "claims by a stepchild or foster child if at any time during his minority the stepparent [or foster parent] expressed a desire to adopt but was denied the consent of the natural parent. Any such child could claim an intestate share of the decedent's estate at his death—no matter how many years elapsed after the removal of the legal impediment. Operating from the stalest sort of evidence, the probate court must then determine whether, 'but for' that legal impediment the decedent would have adopted the [child] during his minority and must negate the existence of other reasons for decedent's abandonment of the adoption. In such cases, of course, the decedent is unavailable to rebut these claims asserted by persons with a direct financial interest. Often, the only corroborating testimony is from the

nonconsenting [natural] parent who may also be financially interested in the outcome. Typically, there will be no other disinterested third parties to verify the decedent's intent, since the subject matter is commonly considered to be of a highly personal and private nature." (*Id.* at pp. 1710-1711, fn. omitted.)

In adopting a reading of what would become Probate Code section 6454 that is different from ours, the *Stevenson* court gave three reasons. Let us consider each in turn.

The *Stevenson* court's first reason against a reading of Probate Code section 6454 like ours is that the foster parent and foster child or the stepparent and stepchild "may decide that" adoption "is not so important" "once" the foster child or stepchild "reaches adulthood." (*Estate of Stevenson, supra,* 11 Cal.App.4th at p. 866.) Whether or not adoption is "important" simply has no bearing on what the provision itself requires. In any event, that adoption may not be "*so* important," as the *Cleveland* court explained, does not mean that it is not important at all: "Adoption implicates estate tax planning (e.g., credits or exemptions for property passed to 'family member'); construction of insurance policies (e.g., 'family member' exclusion); right to recover for wrongful death; right to sue or be sued for negligence; dependency matters . . . ; and custody/visitation issues (as with 'grandchildren' of the stepparent or foster parent)." (*Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1712.) Moreover, that adoption may not be "*so* important," as the *Cleveland* court also explained, "would weigh against the conclusion that" the foster parent or stepparent "considered" the foster child or stepchild "to be one of his . . . 'children.' " (*Id.* at p. 1710.)

■ The *Stevenson* court's second reason against a reading of Probate Code section 6454 like ours is that it would cut off "adult" foster children or stepchildren. (*Estate of Stevenson, supra,* 11 Cal.App.4th at p. 866.) Its premises are that the provision's benefits are not limited to minors, and that legal barriers to the adoption of adults do not exist. That is not the case. Like the *Cleveland* court, we accept the former premise. There is no indication that the provision's benefits are limited to minors. (See *Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1711.) But also like the *Cleveland* court, we reject the latter premise. Legal barriers to the adoption of adults do indeed exist (see Fam. Code, §§ 9301, 9302, 9303, 9328)—and have existed since before the time of the original enactment of what would become the provision (see Civ. Code, former § 227p, as amended by Stats. 1981, ch. 734, § 1, pp. 2888-2889). They include "failure to consent by the adopting person's spouse, the adoptee's spouse, or the adoptee," the limitation of "only one adult adoption of unrelated persons per year," and the requirement that an "adult adoption[] must be '[in] the best interests of the [persons seeking the

adoption] and in the public interest . . . .' " (*Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1708, fn. 10.)

■ The *Stevenson* court's third reason against a reading of Probate Code section 6454 like ours is that the provision's "continuing relationship" requirement "suggests" that the provision "was meant to apply even after" the foster child or stepchild "reached adulthood." (*Estate of Stevenson, supra,* 11 Cal.App.4th at p. 866.) Any such suggestion, however, does not itself suggest that the provision was *not* meant to apply thereafter insofar as its "legal barrier" requirement is concerned.[5] ·

In reading Probate Code section 6454 as we do, we do not overlook a recommendation by the Law Revision Commission, dated October 1997, relating to the provision.

In order to resolve the conflict between *Stevenson* and *Cleveland* in favor of *Stevenson,* the Law Revision Commission has proposed to the Legislature to amend Probate Code section 6454 to provide, in substance, that the legal barrier to adoption need only exist at a time at which adoption was contemplated or attempted. (Recommendation: Inheritance by Foster Child or Stepchild (Oct. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. x6 [preprint copy].)[6] The commission asserts that such an amendment "should not lead to an increase of manufactured claims because of the requirements that the parent-child relationship must continue throughout their joint lifetimes, and that evidence of intent to adopt must be clear and convincing." (*Id.* at p. x7 [same].) With this point, for argument's sake only, we shall agree. The

---

[5]The *Stevenson* court relied in part on *Estate of Lind* (1989) 209 Cal.App.3d 1424 [257 Cal.Rptr. 853]. Without warrant. As pertinent here, the *Lind* court considered whether any legal barrier to adoption of a foster child by his foster parents, as required by what would become Probate Code section 6454, had sufficiently been pleaded—but not when such a barrier had to exist or how long it had to continue. (See 209 Cal.App.3d at pp. 1430-1434.) Quoting dictum that appears in *Lind,* the *Stevenson* court stated that the phrase "legal barrier to adoption" " 'should be interpreted broadly in the spirit of the policy that calls for a liberal interpretation of adoption laws in the best interests of the adopted person. . . .' " (*Estate of Stevenson, supra,* 11 Cal.App.4th at p. 866, quoting *Estate of Lind, supra,* 209 Cal.App.3d at p. 1436.) What such a "broad interpretation" might be is unclear. But what *is* clear is that it would not apply here. By its terms, the provision deals with persons who have *not* been adopted. (See *Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1709.)

[6]"[T]he relationship of parent and child exists between [a] person and the person's foster parent or stepparent if" "(a) [t]he relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent," and "(b) [i]t is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier *existing at the time the adoption was contemplated or attempted, other than that person's refusal to consent or agree to the adoption.*" (Recommendation: Inheritance by Foster Child or Stepchild, *supra,* 27 Cal. Law Revision Com. Rep. (1997) at p. x9 [preprint copy].)

commission also asserts that a reading of the provision like ours would assertedly "preclude inheritance by virtually all adults from . . . a foster parent or stepparent," and would thereby "frustrate the underlying purpose of the" provision "to carry out the likely intent of the intestate decedent." (*Id.* at p. x6 [same].) With this point, we cannot agree. ■ To be sure, we give "substantial weight" to the commission's understanding of a provision it proposed, like the present one. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249 [66 Cal.Rptr. 20, 437 P.2d 508].) ■ But, as we have explained, the provision seems to have been designed to apply only in exceptional circumstances. Moreover, it is hard to conclude that, had he made a will, a foster parent or stepparent would have desired to dispose of any of his property to his foster child or stepchild if a legal barrier to adoption had existed only at a time, perhaps years or even decades before his death, at which adoption was contemplated or attempted, inasmuch as what might then have approached a parent-child relationship could well have suffered a "change in [its] nature or quality" in the interim. (*Estate of Cleveland, supra,* 17 Cal.App.4th at p. 1710.)

Whether the Legislature chooses to amend Probate Code section 6454 along the lines of the Law Revision Commission's recommendation is, without question, a matter that belongs solely to that body. We do not pass on the wisdom of the provision as it may exist sometime in the future. We simply read it as it stands now.[7]

### III

Turning now to the case at bar—in which, as petitioner represents, the "material facts," as disclosed in the probate court's statement of decision, "are undisputed"—we believe that the Court of Appeal was sound in its reasoning and correct in its result when it affirmed the probate court's orders that determined that petitioner was not decedent's daughter or heir and, hence, was not entitled to distribution of his estate in any part, and that revoked her letters of administration of decedent's estate and removed her from office.

The Court of Appeal was right as to the probate court's implied conclusion that Penal Code section 6454 requires that the legal barrier or barriers to adoption of the foster child or stepchild by the foster parent or stepparent must have begun during the foster child or stepchild's minority, and must have continued throughout the joint lifetimes of the foster child or stepchild and the foster parent or stepparent. Such a conclusion is reviewed independently: it resolves a pure question of law, viz., the meaning of the provision

---

[7]To the extent that it is inconsistent with the analysis set out in the text, *Stevenson* is hereby disapproved.

in question. (E.g., *20th Century Ins. Co.* v. *Garamendi* (1994) 8 Cal.4th 216, 271 [32 Cal.Rptr.2d 807, 878 P.2d 566].) It survives scrutiny. The analysis set out above establishes the point. Petitioner argues to the contrary. At bottom, she relies on *Stevenson*. But *Stevenson* has been found wanting. She also relies on the comment, quoted above, that one of the legal barriers to adoption exists "where . . . a parent of the" "foster child or stepchild" "refuses to consent to the adoption." (Sen. Committee on Judiciary Rep., *supra*, 3 Sen. J. (1983-1984 Reg. Sess.) p. 4882.) But that comment deals only with what such a barrier is, and not when it has to exist or how long it has to continue. In addition, she asserts that, in order to give the provision's "continuing relationship" and "legal barrier" requirements independent meaning, we should understand the former to be temporal but not causal and the latter to be causal but not temporal. We cannot do so. What is temporal need not be causal. But what is causal must be temporal: a cause exists only when it operates; it operates only when it is effective; it is effective only when it fills at least one moment in time. Even though we cannot understand the provision's requirements as urged, we can nevertheless give them independent meaning: the former assures that a relationship between the foster parent or stepparent and the foster child or stepchild lasted until death, and the latter assures that that relationship was tantamount to that of adoption.

 The Court of Appeal was also right as to the probate court's express finding that petitioner failed to establish by clear and convincing evidence that decedent would have adopted her but for a legal barrier. Such a finding is reviewed for substantial evidence: It resolves a mixed question of law and fact that is nonetheless predominantly one of fact, inasmuch as it "requires application of experience with human affairs . . . ." (*Crocker National Bank* v. *City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) It survives scrutiny. Petitioner does not argue to the contrary. Under Probate Code section 6454, a legal barrier to adoption must have continued until death. But she admitted below that such a barrier did not perdure. She makes the same admission here.

Lastly, we observe that, to the extent that the purpose of Probate Code section 6454 is to pass the estate of an intestate decedent in accordance with the "intent" that he "is most likely to have had" at the time of death, and to do so in an "efficient and expeditious" manner (Tent. Recommendation Relating to Wills and Intestate Succession, *supra*, 16 Cal. Law Revision Com. Rep. (1982) at p. 2319), it appears to be satisfied in this case. As the probate court stated, "it is not an insignificant fact that," in his old will, decedent "did not express any testamentary intent toward" petitioner "as a successor beneficiary should, as actually happened, his wife have predeceased him." This fact, of course, is not proof. But it is all there is. And it is not challenged.

## IV

For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.

It is so ordered.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**CHIN, J.**—I dissent.

In this case, we must apply Probate Code section 6454,[1] which provides in relevant part: "For the purpose of determining intestate succession by a person . . . from or through a foster parent or stepparent, the relationship of parent and child exists between that person and the person's foster parent or stepparent if both of the following requirements are satisfied: [¶] (a) The relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent. [¶] (b) It is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier."

The Courts of Appeal have disagreed as to the necessary duration of the "legal barrier" that the statute references. (§ 6454, subd. (b).) Construing section 6454's predecessor, the Sixth District held that the legal barrier had to exist only when adoption was attempted or contemplated. (*Estate of Stevenson* (1992) 11 Cal.App.4th 852, 865-866 [14 Cal.Rptr.2d 250] (*Stevenson*).) Construing the same statute, Division Five of the Second District expressly rejected *Stevenson* and held that the legal barrier must have existed throughout the lives of the child and the foster parent or stepparent. (*Estate of Cleveland* (1993) 17 Cal.App.4th 1700, 1709-1713 [22 Cal.Rptr.2d 590] (*Cleveland*).)

Essentially agreeing with *Cleveland*, the majority rewrites the statute so as to render it virtually inapplicable to adult foster children or stepchildren, who seldom (if ever) could demonstrate a lifetime legal barrier to adoption. This narrow construction is neither compelled by the words of the statute nor necessary to effectuate the Legislature's intent. On the contrary, *Stevenson*'s interpretation, which has the express endorsement of the commission that drafted the statute for the Legislature, is both more logical and more consistent with the available indicia of legislative intent. Moreover, the advantages that the majority claims for its construction are largely illusory.

---

[1] Unless otherwise indicated, all further statutory references are to the Probate Code.

Accordingly, I cannot join in the majority's restrictive revision of section 6454.

## I. DISCUSSION

### A. *The Statutory Language Is Reasonably Susceptible to the Stevenson Interpretation.*

The "primary and overriding goal of all statutory interpretation" is to determine the Legislature's intent. (*Pacific Southwest Realty Co.* v. *County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046].) In making this determination, we first look to the words of the provision in question. "When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.]" (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*).) However, when the language is susceptible to more than one reasonable interpretation, we look to a variety of extrinsic aids, including legislative history, and consider the consequences that will flow from a particular interpretation. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*); *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

The majority does not assert that the language of section 6454 is clear, unambiguous, and susceptible to only one reasonable interpretation. Rather, the majority simply declares that its construction "is consistent with the words" of the statute. (Maj. opn., *ante*, at p. 212.) Indeed, to bolster its construction, the majority rewrites the language of subdivision (b) to require proof that the legal barrier was "the necessary cause of the failure to adopt." (Maj. opn., *ante*, at pp. 206, 212.) The majority also establishes an admittedly implied requirement of proof that "an intent to adopt . . . continued" until the death of the foster parent or stepparent. (*Id.* at p. 212.) These requirements are not apparent from the words of the statute. That the majority does not believe the plain meaning of the statutory language compels its construction is also evident from its discussion of the statute's purpose, as reflected in legislative history. (*Id.* at pp. 212-214.) This discussion would be unnecessary if the majority's reading of the statute were the only reasonable one.

Nor could the majority correctly assert that its construction is the only reasonable one. Where evidence conclusively shows that the foster parent or stepparent attempted to adopt the child at some point and that a legal barrier

thwarted the attempt, one can reasonably conclude that the foster parent or stepparent "would have adopted the [child] but for a legal barrier." (§ 6454, subd. (b).) This conclusion would be reasonable whether or not a legal barrier also existed after (and before) the unsuccessful adoption attempt. Of course, in any given case, the probate court as the trier of fact, not this court, should decide in the first instance whether the evidence in support of this conclusion is "clear and convincing." (§ 6454, subd. (b).)

B. *The Majority's Construction Is Inconsistent With the Statutory Language Viewed in Context.*

In determining the meaning of section 6454, subdivision (b), we must consider its language "in the context of the entire statute . . . and the statutory scheme of which it is a part." (*DuBois, supra*, 5 Cal.4th at p. 388.) "[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, supra*, 43 Cal.3d at p. 1387.)

The majority's construction of section 6454, subdivision (b), is inconsistent with the provision's language viewed in the context of the entire statute. The majority essentially reads into the statute two qualifiers for the "legal barrier" requirement of subdivision (b), declaring that the legal barrier to adoption must have: (1) "begun during the foster child or stepchild's minority"; and (2) "continued throughout the joint lifetimes of the foster child or stepchild and the foster parent or stepparent . . . ." (Maj. opn., *ante*, at p. 212.) Notably, subdivision (a) of section 6454 uses virtually identical language in *expressly* setting forth these same qualifiers for the relationship that must have existed between the foster parent or stepparent and the child. It requires that the relationship: (1) "began during the person's minority"; and (2) "continued throughout the joint lifetimes of the person and the person's foster parent or stepparent." (§ 6454, subd. (a).) Thus, in subdivision (a), the Legislature has demonstrated that, if it intends to establish these requirements, it knows how to draft statutory language expressly doing so. The Legislature's omission of this language from subdivision (b) therefore suggests that it did *not* intend to establish these qualifiers for the "legal barrier" requirement. "[W]hen *different* words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended." (*People* v. *Jones* (1988) 46 Cal.3d 585, 596 [250 Cal.Rptr. 635, 758 P.2d 1165], original italics.) Instead of following this principle and giving effect to the different wording of the two subdivisions, the majority essentially rewrites subdivision (b) using the language of subdivision (a).

By rewriting section 6454 to require a continuous, lifetime legal barrier to adoption (and a continuous, lifetime intent to adopt), the majority violates

the "cardinal rule" of statutory construction that prohibits us from adding provisions to statutes. (*Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].) Under the guise of interpretation, we may not "insert qualifying provisions not included" in section 6454. (*People* v. *One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677]; see also *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297]; Code Civ. Proc., § 1858 [in construing statute, court may not "insert what has been omitted"].) Unlike the majority, then, I would not rewrite section 6454 by reading the express requirements of subdivision (a) into subdivision (b).

C. *The Purposes Underlying the Probate Code Do Not Justify the Majority's Construction.*

The majority declares that its reading of section 6454 "suits" one of the purposes underlying the Probate Code: to pass the estates of intestate decedents in accordance with their likely intent at the time of death.[2] (Maj. opn., *ante*, at p. 212.) The majority asserts that, where proof exists of both a continuous legal barrier to adoption and a continuous intent to adopt, we can readily conclude that a decedent, had he or she made a will, would have left property to the foster child or stepchild. By contrast, the majority declares, "it is hard" to make this conclusion where the legal barrier existed only at the time the adoption was attempted or contemplated. (*Id.* at p. 213.) Under the latter circumstances, we can make no inference regarding the existence of a parent-child relationship between a decedent and a foster child or stepchild other than at the time of the adoption attempt. (*Ibid.*)

As I read section 6454, the Legislature has adequately addressed the majority's concern about carrying out a decedent's likely intent by expressly imposing in subdivision (a) the *additional* requirement that "[t]he relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent." (§ 6454, subd. (a).) Courts have strictly construed this provision. In *Estate of Claffey* (1989) 209 Cal.App.3d 254, 257-260 [257 Cal.Rptr. 197] (*Claffey*), the court held that the continuous parent-child relationship subdivision (a) requires must be a family relationship like that of a biological parent and child. Thus, the majority is needlessly concerned that, under *Stevenson*'s interpretation, a foster child or stepchild could share in an estate despite a significant change in his or her relationship with a decedent; the other statutory requirements

---

[2] For the sake of simplicity, "decedent" refers to the foster parent or stepparent through whom the claimant seeks to share in an estate. The statute may also apply where the intestate decedent is not the foster parent or stepparent.

preclude this result and ensure that the statute will not apply to a foster child or stepchild who had become no more than "a friend" of the decedent.[3] (Maj. opn., *ante*, at p. 213.)

In disagreeing with the majority, I emphasize the narrowness of the question before us: whether the absence of a legal barrier to petitioner's adoption after she reached the age of majority precludes her, *as a matter of law*, from establishing that decedent would have adopted her "but for a legal barrier." (§ 6454, subd. (b).) By enacting section 6454, the Legislature indicated that the probate court, as the fact finder, ordinarily should decide whether a decedent would have adopted a foster child or stepchild but for a legal barrier. Contrary to this intent, the majority removes this question from the probate court's consideration in all but the rare cases where both a continuous legal barrier to adoption and a continuous intent to adopt existed. In so doing, the majority weighs certain evidentiary factors in an attempt to make factual determinations about a decedent's likely intent.[4] In my view, this is the function of the probate court considering the entire evidentiary record in a given case, not of this court in the abstract. If the evidence is weak, then the probate court may conclude *as a factual matter* that the requirements of the statute have not been met. That a legal barrier to adoption did not exist continuously during adulthood is a circumstance for the probate court to weigh in determining whether the foster parent or stepparent would have adopted the child but for a legal barrier. It is not a basis for completely removing the issue from the fact finder's consideration.

The majority next declares that its construction furthers another purpose of the statute: to pass the decedent's estate "efficiently and expeditiously." (Maj. opn., *ante*, at p. 213.) It will, the majority asserts, at least reduce "marginal claims . . . based on little more than an assertion that [a legal barrier] existed only at a time at which adoption was contemplated or

[3]For the same reason, I disagree with the majority that the "legal barrier" requirement has "independent meaning" as the requirement that "assures" the relationship between the foster child or stepchild and the foster parent or stepparent "was tantamount to" an adoptive one. (Maj. opn., *ante*, at p. 216.) Even if the majority is correct in assuming the Legislature intended the requirements of section 6454 to provide this assurance, the "continuous relationship" requirement of subdivision (a), as judicially construed, already serves this function, at least in significant part.

[4]For example, quoting *Cleveland*, the majority declares: "[T]hat [an adult] adoption may not be '*so* important . . . would weigh against the conclusion that' the foster parent or stepparent 'considered' the foster child or stepchild 'to be one of his . . . "children." ' " (Maj. opn., *ante*, at p. 214, quoting *Cleveland, supra,* 17 Cal.App.4th at p. 1710.) Again quoting *Cleveland*, the majority also declares that a failure to adopt during adulthood, despite the absence of a legal barrier, "would signify that what might once have approached a parent-child relationship . . . might well have suffered a 'change in [its] nature or quality' in the interim." (Maj. opn., *ante*, at p. 213, quoting *Cleveland, supra,* 17 Cal.App.4th at p. 1710.)

attempted." (*Ibid.*) A contrary interpretation, the majority worries, will require the probate court to determine claims " 'from the stalest sort of evidence,' " without benefit of the decedent's testimony or corroborating testimony from disinterested third parties. (*Ibid.*)

For three reasons, I reject the majority's reliance on the supposed efficiency of its interpretation. First, the other requirements of the statute provide ample protection against marginal claims and ensure defeat of a claim "based on little more than an assertion that [a legal barrier] existed only at the time at which adoption was contemplated or attempted." (Maj. opn., *ante*, at p. 213.) As I have previously noted, subdivision (a) of section 6454 requires proof that the parent-child relationship "began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent." And, under subdivision (b), the proof that the foster parent or stepparent would have adopted the person but for a legal barrier must be "clear and convincing." As the majority notes (maj. opn., *ante*, at p. 215), the California Law Revision Commission (Commission), in its recent recommendation that the Legislature expressly codify *Stevenson*, relied on precisely these requirements to conclude that *Stevenson*'s interpretation of section 6454 "should not lead to an increase of manufactured claims . . . ." (Recommendation: Inheritance by Foster Child or Stepchild (Oct. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. x7 [preprint copy].) The majority does not contest this conclusion. (Maj. opn., *ante*, at p. 215.) Thus, we need not rewrite the statute and impose new requirements to prevent marginal claims from succeeding.

Second, the majority overstates the extent to which the goal of efficiency should guide our inquiry. By opening up a decedent's estate to claims of foster children and stepchildren, and by making these claims depend on proof of highly fact-specific requirements, section 6454, by its very nature, is inconsistent with the goal of efficiency. Had efficiency been the Legislature's sole concern, it would not have enacted section 6454. Instead, it would have left California law unchanged and in accord with that of other states by simply omitting foster children and stepchildren from the intestacy statutes. Thus, by enacting section 6454, the Legislature demonstrated that, at least in this one area, it was not primarily concerned about efficiency.[5]

Third, the majority's reading is no more efficient than *Stevenson*'s. Both constructions would require the probate court to rely on the same "stale"

---

[5]The majority asserts that the Commission's purpose in drafting the 1983 revisions to the Probate Code was to establish new rules that would pass an estate consistent with the decedent's likely intent "in a 'more efficient and expeditious' manner. [Citation.]" (Maj. opn., *ante*, at p. 209.) However, in a summary of its report to the Legislature, the Commission explained that "many," not *all*, of its proposed changes were being "made to clarify and simplify probate law, . . . and to promote national uniformity of law." (Tent. Recommendation Relating to Wills and Intestate Succession (Nov. 1982) 16 Cal. Law Revision Com. Rep.

evidence without the benefit of testimony from either the decedent or disinterested third parties. Indeed, the majority's interpretation is perhaps the *less* efficient one, because it will require consideration of even *more* of the very evidence that the majority finds suspect. Under the majority's approach, the parties must introduce evidence as to whether, at *every moment* during the joint lifetimes of the decedent and the foster child or stepchild, there was a legal barrier to adoption. Proof of this fact may require, for example, evidence that there was no point during the child's minority when his or her natural parents would consent to adoption, and no point during adulthood when his or her spouse would consent. Under the majority's approach, the parties must also introduce evidence as to whether, at *all times* until death, decedent had an intent to adopt. Thus, the legislative goals the majority cites do not justify its revision of the statute.

D. *The Majority's Construction Is Inconsistent With Indicia of the Legislature's Intent.*

Not only does the majority overstate the extent to which certain legislative goals support its construction of section 6454; it understates the importance of other indicia of legislative intent that support *Stevenson*'s contrary construction. The Commission's published comment to section 6454 states: "Section 6454 applies, for example, where a foster child or stepchild is not adopted because a parent of the child refuses to consent to the adoption. See also *Estate of Lind*, 209 Cal.App.3d 1424 . . . (1989); *Estate of Claffey*, 209 Cal.App.3d 254 . . . (1989)." (Cal. Law Revision Com. com., 53 West's Ann. Prob. Code (1997 pocket pt.) foll. § 6454, p. 181.) The Commission first issued the comment in substantially this form when it drafted and recommended enactment of a new Probate Code in 1989, which included section 6454's identical predecessor.[6] (Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 1470.) The comment thus constitutes persuasive evidence of the Legislature's intent in subsequently enacting the Commission's recommendation into law. (*People* v. *Garfield* (1985) 40 Cal.3d 192, 199 [219 Cal.Rptr. 196, 707 P.2d 258].) In two ways, it indicates that *Stevenson*, not *Cleveland*, provides the correct statutory interpretation.

First, contrary to the legislative intent the comment evidences, the majority's construction of section 6454 excludes most foster children and stepchildren who were not adopted because a natural parent refused to consent. The

---

(1982) p. 2311, italics added.) Even under the majority's construction, section 6454 does not serve these ends.

[6]As the majority correctly notes, in proposing new probate provisions, the Commission was acting at the express direction of the Legislature. (See maj. opn., *ante*, at pp. 208-209.)

majority correctly observes that some legal barriers to adoption may apply to adult foster children or stepchildren. (Maj. opn., *ante*, at pp. 214-215.) However, the likelihood that one (or some combination) of these barriers will continuously exist throughout the joint lifetimes of a decedent and a foster child or stepchild seems remote at best. Thus, the majority's construction will, in the words of the Commission, "preclude inheritance by virtually all adults from . . . a foster parent or stepparent." (Recommendation: Inheritance by Foster Child or Stepchild, *supra*, 27 Cal. Law Revision Com. Rep. (1997) p. x6 [preprint copy].) It will render the statute inapplicable *as a matter of law* to foster children and stepchildren who were not adopted during minority because a natural parent refused to consent, except in the rare case where the child is still a minor at the time of (or reached the age of majority shortly before) decedent's death.

The majority's response on this point is unconvincing. The majority asserts that exclusion of most adults from the reach of the statute is consistent with legislative intent because the statute "seems to have been designed to apply only in exceptional circumstances." (Maj. opn., *ante*, at p. 216.) However, the majority cites no support for its assertion about the intended scope of the statute. In any event, as previously noted, the other requirements of section 6454 limit its scope, by requiring that the parent-child relationship began during the child's minority, that the relationship continued throughout the joint lifetimes of the child and the foster parent or stepparent, and that the proof the latter would have adopted the child but for a legal barrier be clear and convincing. These requirements independently render the statute applicable only in exceptional circumstances. Even if we assume, then, that this was the Legislature's intent, we need not exclude virtually all adults in order to achieve consistency with that intent.

Second, the comment's approving citation of *Estate of Lind* (1989) 209 Cal.App.3d 1424 [257 Cal.Rptr. 853] (*Lind*) and *Claffey, supra*, 209 Cal.App.3d 254, suggests the *Stevenson* interpretation is correct. In *Lind*, the probate court had dismissed claimant's will contest on demurrer for lack of standing. On appeal, claimant argued in part that he had standing because he would take under section 6454's predecessor if the will contest succeeded. Claimant's foster parents had taken him into their home shortly after his birth, where he resided until he entered the military in 1942, and they had treated him as their natural son throughout their lifetimes. (*Lind, supra*, 209 Cal.App.3d at pp. 1429, 1432.) The court held that claimant could invoke the statute where his pleadings and the evidence in opposition to the demurrer showed only an attempt to adopt *after claimant had become an adult* and a legal barrier (statutory prohibition of adult adoptions) *existing only at that time*. (*Id.* at pp. 1433-1434.) For the guidance of the probate court, the

appellate court also discussed the evidentiary showing claimant would have to make to establish his claim under the statute, stating: "If an attempt to legally adopt was made, it can be inferred it failed because of a legal barrier, absent evidence the attempt was aborted for nonlegal reasons (such as a change of heart, lack of funds, or mere lethargy), provided a definite legal barrier can be shown to have existed at the time of the attempted adoption. If [claimant] is able to demonstrate to the court by clear and convincing evidence that [his foster parents] would have adopted him in 1942, the state's prohibition of adult adoptions at that time would constitute a suffi- cient legal barrier to the adoption." (*Id.* at p. 1436.) Thus, notwithstanding that claimant had lived with his foster parents from shortly after his birth, the court held that he could invoke the statute with proof of a single, unsuccess- ful attempt to adopt him *after* he became an adult. The court did not suggest he would also have to show that there was a legal barrier to adoption either while he was a minor or after the 1951 repeal of the prohibition on adult adoptions. Citation of *Lind* in the comment to section 6454 thus indicates that, as the Legislature understands the statute, the record in *Lind* may satisfy the requirements of section 6454. The interpretation of the *Stevenson* court, which relied on *Lind*, is consistent with the Legislature's understanding. (See *Stevenson, supra,.* 11 Cal.App.4th at pp. 865-866.) The majority's construc- tion is not; under it, the *Lind* record would be insufficient even to state a claim and survive demurrer.

*Claffey* also supports the *Stevenson* interpretation, although perhaps less directly. Claimants in *Claffey* were minors when their father married dece- dent in 1935. (*Claffey, supra,* 209 Cal.App.3d at pp. 255-256.) Decedent died intestate in 1985, decades after the younger claimant reached adulthood. (*Id.* at p. 256.) Claimants sought to share in the estate under section 6454's predecessor, alleging only that decedent would have adopted them but for their natural mother's refusal to consent. (*Claffey, supra,* 209 Cal.App.3d at p. 256.) They did not allege that a legal barrier to their adoption existed during their adulthood. The appellate court affirmed a judgment against claimants based on the jury's finding that a continuous family relationship had not existed between claimants and decedent. (*Id.* at p. 259.) Alterna- tively, the court held that claimants had failed to establish the "legal barrier" requirement of the statute. (*Id.* at p. 259, fn. 6.) Notably, in reaching this conclusion, the court did *not* hold that the absence of evidence of a legal barrier to adoption during claimants' adulthood defeated their claim *as a matter of law*. Rather, it relied on the *jury's factual finding* that, "although there was a legal barrier to adoption" (*id.* at p. 257), "there was not clear and convincing evidence [decedent] would have adopted [claimants] if the mother had consented." (*Id.* at p. 259, fn. 6.) Thus, the court did not construe the statute as requiring that a legal barrier to adoption existed continuously

until decedent's death, although this construction would have easily disposed of the case. Citation of this case in the comment to section 6454 therefore provides further support for *Stevenson*'s construction.

E. *The Consequences of the Majority's Construction Are Contrary to the Legislature's Purpose.*

When a question of statutory construction is uncertain, we must consider the consequences that will flow from a particular interpretation. (*Dyna-Med, supra*, 43 Cal.3d at p. 1387.) We "should not adopt a statutory construction that will lead to results contrary to the Legislature's apparent purpose." (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 425 [261 Cal.Rptr. 384, 777 P.2d 157].)

The majority's construction of section 6454 violates this principle because it will lead to results contrary to the Legislature's purpose. As I have previously noted, because a continuous legal barrier rarely exists after the foster child or stepchild reaches adulthood, the majority's construction renders section 6454 inapplicable to virtually all adult foster children and stepchildren, no matter how strong the evidence of the decedent's intent. Thus, under the majority's interpretation, even where an adoption attempt during the child's minority failed because the child's natural parents would not consent, and repeated adoption attempts during the child's adulthood failed because of some other legal barrier, section 6454 would not apply if, during some relatively brief period (e.g., five years or even one year), no legal barrier to adoption existed. Also, under the majority's construction, even where a legal barrier defeated repeated and continuous adoption attempts throughout the child's adulthood, section 6454 would not apply if no legal barrier to adoption existed during the child's minority or if, for any reason (such as respect for the child's natural parents), decedent had no intent to adopt during that period. This result finds no support in the language of the statute, which requires on its face only that the *relationship* between the child and the foster parent or stepparent began during the child's minority. (§ 6454, subd. (a).)

Indeed, the majority's construction will exclude even certain minors whom the Legislature no doubt intended to include. Under the majority's approach, section 6454 is inapplicable unless, from the outset of the parent-child relationship between a decedent and the foster child or stepchild, both a legal barrier to adoption and an intent to adopt existed. Thus, the majority would exclude a foster child or stepchild whose foster parents or stepparents could have initially adopted the child, but did not form the intent to do so until some later point during the child's minority—e.g., after the natural

parents lost touch with the child, moved away, or died—when a legal barrier prevented it. I cannot conclude that these consequences are consistent with the Legislature's intent.

## II. CONCLUSION

For all of the reasons set forth above, I would reverse the judgment of the Court of Appeal.