Filed 6/4/18

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| JAMES GUND et al., | C076828 |
| Plaintiffs and Appellants, | (Super. Ct. No. 11CV080) |
| v. | |
| COUNTY OF TRINITY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Trinity County, Richard Scheuler, Judge. Affirmed.

Zwerdling, Bragg & Mainzer, Benjamin H. Mainzer for Plaintiffs and Appellants.

Porter Scott, John R. Whitefleet for Defendants and Respondents.

This lawsuit alleges that a Trinity County deputy sheriff phoned citizens James and Norma Gund -- who do not work for the County -- and asked them to go check on a neighbor who had called 911 for help likely related to inclement weather. The Gunds

1

unwittingly walked into a murder scene and were savagely attacked by the man who apparently had just murdered the neighbor and her boyfriend.  The assailant fled.

The Gunds sued the County of Trinity and the deputy -- Corporal Ron Whitman -- for negligence and misrepresentation, alleging defendants created a special relationship with the Gunds and owed them a duty of care, which defendants breached by representing that the 911 call was likely weather-related and "probably no big deal" and by withholding information known to defendants suggesting a crime in progress -- i.e., that the caller had *whispered* "help me," that the California Highway Patrol (CHP) dispatcher refrained from calling back when the call was disconnected out of concern the caller was in danger, and that no one answered when the county dispatcher called.

Defendants filed a motion for summary judgment on the ground that plaintiffs' exclusive remedy was workers' compensation, because Labor Code section 3366 provides that any person "engaged in the performance of active law enforcement service as part of the posse comitatus or power of the county, and *each person . . . engaged in assisting any peace officer in active law enforcement service at the request of such peace officer*, is deemed to be an employee of the public entity that he or she is serving or assisting *in the enforcement of the law*, and is entitled to receive compensation from the public entity in accordance with the provisions of this division [workers' compensation]. . . ."  (Italics added; unless otherwise set forth, statutory references that follow are to the Labor Code.)

Defendants' motion did not acknowledge or address plaintiffs' factual allegations that the deputy misled them about the nature of the activity, minimized the risk, lulled them into a false sense of security, and that plaintiffs relied on the deputy's misrepresentations.  Absent section 3366, these allegations potentially support imposing tort liability against defendants.  (E.g., *Wallace v. City of Los Angeles* (1993) 12 Cal.App.4th 1385, 1401-1402 (*Wallace*).)

2

Plaintiffs' opposition submitted evidence supporting their factual allegations and argued section 3366 is inapplicable in these circumstances.

Defendants' reply denied that the deputy misrepresented facts or misled plaintiffs (thus displaying factual disputes) but claimed any factual disputes were immaterial because responding to a 911 call is a law enforcement activity. The trial court adopted the defense theory and entered summary judgment.

On appeal, plaintiffs contend section 3366 is inapplicable because they were not engaged in assisting in active law enforcement. We grant plaintiffs' request that we take judicial notice of a Law Revision Commission Report concerning section 3366.

We conclude section 3366 applies to this case, because responding to a 911 call for help of an uncertain nature is active law enforcement, regardless of the deputy's misrepresentations. "Active law enforcement" under section 3366 means confronting the risks of dealing with the commission of crime or breach of the peace for the protection of the public. Any 911 call carries such risk, but particularly a 911 call for help of an uncertain nature.

Since we conclude section 3366 bars plaintiffs' lawsuit on the ground they were assisting in active law enforcement, we need not address alternate defense theories that the lawsuit is barred because (1) plaintiffs were employees because they assisted upon command (posse comitatus); (2) County Resolution No. 163-87 deems volunteers to be employees if they provide "service" to the county; or (3) defendants' new theory on appeal that the County and Deputy Sheriff have governmental immunity from tort liability for misrepresentation (Gov. Code, §§ 818.8, 822.2).

We affirm the judgment.

FACTS AND PROCEEDINGS

The operative pleading is the first amended complaint, which asserted claims for vicarious liability for public employee's act or omission (Gov. Code, §§ 815.2, subd. (a),

3

820, subd. (a)) and misrepresentation with malice (Gov. Code, § 822.2). The Gunds also filed in federal court a lawsuit against Trinity County and Whitman, alleging violation of civil rights (42 U.S.C. § 1983), which is stayed pending resolution of this case. (*Gund v. County of Trinity* (9th Cir. 2015) 624 Fed.Appx. 519 [Ninth Circuit's unpublished rejection of defendants' appeal of district court's denial of motion to dismiss]; *Gund v. County of Trinity* 2013 WL 3942030; 2013 U.S. Dist. LEXIS 106823 [unpublished district court opinion denying motion to dismiss § 1983 claim and staying case pending resolution of state court litigation].)

The pleading in state court alleged that, on March 13, 2011, at 3:28 p.m., CHP received a 911 call originating in the vicinity of the Kettenpom airstrip in Trinity County. The female caller, K.C., whispered, "help me" and said she lived at the end of the Kettenpom airstrip. The CHP dispatcher conveyed this information, and an opinion that the caller was attempting to avoid being overheard, to the Trinity County Sheriff's Office. The county dispatcher tried calling the 911 caller, but there was no answer. The county dispatcher passed the information to Corporal Whitman.

Corporal Whitman telephoned plaintiffs, who lived near the airstrip, and asked them to go check on K. Whitman told plaintiffs that K. had phoned 911 call for help likely related to the inclement weather. He did not tell plaintiffs that the caller had been whispering or that the CHP dispatcher thought it was because the caller did not want to be overheard, but instead told plaintiffs it was "probably no big deal." Plaintiffs alleged Whitman misled them by asserting without basis that the call was likely related to inclement weather, and by concealing information suggesting a crime in progress. Plaintiffs relied on Whitman's representations and drove to K.'s home, feeling no concern for their own safety. Once there, they were brutally attacked by a man who apparently had just committed murder.

Defendants filed a summary judgment motion on the ground that workers' compensation was plaintiffs' exclusive remedy under section 3366 (persons engaged in

active law enforcement are deemed to be employees). Defendants purported to accept plaintiffs' "version of events" for purposes of the motion yet ignored the significant factual allegations of the complaint that plaintiffs were misled into believing they were just checking on a weather-related matter. Omitting these critical allegations, defendants' separate statement of undisputed facts merely stated that Whitman phoned Mrs. Gund, identified himself and said a "[K.]" had phoned 911 and said, "help me;" that Mrs. Gund "claims" Whitman said he was "hours away" and asked her go to K.'s house to see if she was okay and told Mrs. Gund not to go without her husband; that Mr. Gund understood he was checking on K.'s welfare; that they went together and were attacked and injured by a third party.

Defendants alternatively sought summary judgment on the ground that section 3363.5 authorizes counties to adopt resolutions deeming public agency volunteers to be employees, and Trinity County on December 1, 1987, adopted Resolution No. 163-87, declaring that any person who performs various "services" for the county, including law enforcement, voluntarily or without pay, is deemed to be a county employee for workers' compensation purposes.

The motion's omission of the complaint's factual allegations about plaintiffs being misled is particularly odd, given that defendants' demurrer was overruled (by a different, assigned judge) on the ground that a factual issue existed as to whether a person asked to check on a neighbor under these circumstances is engaged in assisting in active law enforcement, and the case may depend "not only on what request was made but how it was made."

Plaintiffs nevertheless opposed the summary judgment motion on the merits. The opposition acknowledged that most of defendants' facts were undisputed but filled in the gaps with their own evidence (mostly deposition testimony) to support their own separate statement of undisputed facts: That Whitman knew but failed to disclose that the 911 caller had *whispered* for help, that the CHP dispatcher was concerned the caller was

5

trying to summon help secretly, and that there was no answer when the county dispatcher tried to call. Plaintiffs relied on Whitman's representations -- that the neighbor's call was likely related to inclement weather and was "probably no big deal" -- that lulled plaintiffs into a false sense of security.

Plaintiffs' evidence showed: Whitman did not know the Gunds personally and was not aware of them ever assisting law enforcement in the past, but he knew they lived near the airstrip. According to Mrs. Gund, Whitman phoned and asked if she knew someone named K. who also lived near the airstrip, and Mrs. Gund said yes. Whitman said K. had called 911 for help. Whitman said her call was likely related to inclement weather and was "probably no big deal." He asked if K.'s boyfriend ever seemed violent, and Mrs. Gund said no, he "seems real mellow." Whitman did not disclose that the 911 caller had been whispering, or that the call had been interrupted, or that the CHP dispatcher was concerned the caller whispered so as not to be overheard, or that the county dispatcher had tried calling K. without success. In deposition, Whitman claimed a failure of recollection but admitted knowing the caller whispered and did not answer when the dispatcher tried calling back. Whitman claimed he did not pass this information along to Mrs. Gund because Whitman phoned the Gunds only to gather information about the neighbor and where she lived and who else might be in the area.

Mrs. Gund testified Whitman said he was "hours away" and asked her to go check on K. but not to go alone. The Gunds agreed to check on the neighbor because they believed the 911 call was weather-related. As the Gunds drove to K.'s house, they discussed whether perhaps a tree had fallen or perhaps K., a young city girl, was having trouble with her wood-burning stove.

Mrs. Gund went in first while Mr. Gund stayed in the truck. Mrs. Gund was attacked with a knife by the man who apparently had just murdered K. and her boyfriend C. No evidence of the murder was adduced in this summary judgment proceeding, but the parties agree to this fact on appeal.

6

Mr. Gund heard a commotion, entered the house and saw his wife being held down and having her throat cut with a knife. The attacker attacked Mr. Gund. Mrs. Gund fled in the truck to seek help at a nearby store. Mr. Gund was tased and punched repeatedly. He saw a motionless body on the floor with a bag over the head. The attacker cut Mr. Gund's throat with a knife. Mr. Gund managed to get the knife away and flee on foot to his house to get another vehicle. As he ran to his house, he saw the attacker run away. Mr. Gund found his wife at the store.

Defendants' reply papers stated that plaintiffs' assertions -- as to Whitman's knowing withholding of the circumstances of the 911 call and his false assurances that the call was probably weather-related and no big deal -- were disputed as to "phraseology" and Corporal Whitman denied them. However, defendants claimed, "These additional facts are and [sic] not material for purposes of this motion." In defendants' view, all that mattered was the plaintiffs were responding to a 911 call.

At the hearing in the trial court, plaintiffs argued section 3366 is inapplicable under an objective or subjective standard, i.e., that given defendants' misrepresentations, (1) reasonable persons in plaintiffs' position would not perceive themselves to be engaged in active law enforcement, and (2) plaintiffs did not think they were engaged in active law enforcement. Under either standard, summary judgment would be improper. In other words, the deputy's request for assistance with a weather-related 911 call was not a request for plaintiffs to engage in active law enforcement, and plaintiffs did not engage in active law enforcement by complying with that request.

The trial court ruled orally from the bench and incorporated the reporter's transcript in its order granting summary judgment. The court acknowledged the existence of factual disputes about defendants' misrepresentations but said, "those disagreements are not before the Court, because for purposes of this motion the defendants have accepted the factual assertions of the plaintiffs. [Defendants] assert that

7

even accepting plaintiffs' factual scenario, there is no viable cause of action. So in this ruling I accept the plaintiffs' factual scenario."

However, the trial court did not really accept plaintiffs' factual scenario, because the court ignored (as did defendants) evidence that plaintiffs were persuaded to assist by defendants' misrepresentations about the nature of the activity they were assisting.

The court also said it did not have to decide whether the "posse comitatus" aspect of section 3366 applied, because the court concluded "the response to a 911 call under the facts of this case [are such] that said response makes plaintiffs/persons engaged in assisting a peace officer in active law enforcement" and therefore plaintiffs were covered by workers' compensation. At first, the court said Whitman told Mrs. Gund that the 911 caller had whispered, but deleted that upon being corrected by counsel and said it did not matter.

The trial court also found the County Resolution inapplicable, ruling plaintiffs were not "volunteers" because they did not initiate the activity, and the deputy did not ask them if they would consider volunteering.

Plaintiffs appeal from the judgment.

DISCUSSION

As the parties moving for summary judgment, defendants had the burden to show that workers' compensation is a complete defense to the lawsuit. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets its burden to show a complete defense on summary judgment, the burden then shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*) "We review the record and the determination of the trial court de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003; see also, *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

8

Where workers' compensation is available, it is the exclusive remedy for work-related injury.  (§ 3602.)  Workers' compensation is generally *not* available to persons "performing voluntary service for a public agency" who do not receive remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses.  (§ 3352, subd. (a).)  Section 3366 provides an exception for civilians assisting peace officers in "active law enforcement."

Section 3366 provides that each person "engaged in the performance of active law enforcement service as part of the posse comitatus [power of the county] or power of the county [*sic*], and each person . . . engaged in assisting any peace officer in active law enforcement service at the request of such peace officer, is deemed to be an employee of the public entity that he or she is serving or assisting in the enforcement of the law, and is entitled to receive compensation from the public entity in accordance with the provisions of this division [workers' compensation]. . . ."

Plaintiffs were clearly assisting a peace officer at his request.  The question is whether they were engaged in assisting in "active law enforcement service."  (§ 3366.)

" 'Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.' " (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.)  Where the language is clear, we do not stray from its plain meaning "unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)  And, "we are, absent contrary direction, bound to give the words the Legislature chose their usual and ordinary meaning." (*Bernard v. Foley* (2006) 39 Cal.4th 794, 807.)  Neither are we permitted to "insert what has been omitted, or . . . omit what has been inserted." (Code Civ. Proc., § 1858.)  But where "the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy" to discern

9

the legislative intent. (*Coalition of Concerned Communities, Inc., supra*, 34 Cal.4th at p. 737.) Regardless, we construe the language in the context of the entire statutory framework, with consideration given to the policies and purposes of the statute. (*Jones v. Superior Court* (2016) 246 Cal.App.4th 390, 397.)

Section 3366 is part of the provisions defining employees within the scope and operation of the workers' compensation laws. (Labor Code, Div. 4, Pt. 1, Ch. 2.) We are mindful that workers' compensation statutes are liberally construed in favor of injured workers who seek workers' compensation benefits. (*Biggers v. Workers' Comp. Appeals Bd.* (1999) 69 Cal.App.4th 431, 441 (*Biggers*).) The underlying premise of exclusivity of the workers' compensation remedy is a presumed bargain that the employer assumes liability for industrial injury without regard to fault in exchange for limitations on the amount of that liability, and the employee is afforded relatively swift and certain payment of benefits to relieve the effects of industrial injury without having to prove fault but gives up the wider range of damages potentially available in tort. (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 811.)

The question here is whether a deputy who asks a civilian to help a neighbor who called 911 with a weather-related issue is requesting the civilian's assistance with "active law enforcement" such that the civilian is assisting "in the enforcement of the law" under section 3366 *as a matter of law*.

Plaintiffs argue that checking on a neighbor does not constitute active law enforcement; peace officers perform community care-taking services that do not involve active law enforcement; and checking on someone with a weather-related problem is not active law enforcement. However, the 911 caller did not report a weather-related problem but just whispered for help. There was no basis for the deputy to conclude the 911 call was weather-related. Had the deputy responded to the 911 call, he clearly would have been engaged in active law enforcement, because any 911 call seeking unspecified help presents a risk of criminal activity. Since the deputy would have been engaged in

10

active law enforcement had he responded, plaintiffs were engaged in active law enforcement when they responded to the 911 call on his behalf -- regardless of the deputy's misrepresentations to plaintiffs that the call was likely weather-related and omission of facts that the caller whispered for help, was disconnected, and did not answer a return call. Even though plaintiffs were unaware of the facts suggesting potential criminal activity and felt lulled into a false sense of security by the deputy's misrepresentations and omissions, plaintiffs still knew they were responding to a 911 call for help, the nature of which was not certain.

Section 3366 does not define "active law enforcement." However, responding to 911 calls for unspecified help is clearly active law enforcement.

"The legislative purpose of [section 3366] was to cover a person who assumes the functions and risks of a peace officer . . . ." (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 263, fn. 11.) *McCorkle* briefly addressed and rejected a city's argument, made for the first time in the Supreme Court, that section 3366 precluded a civil lawsuit by a motorist injured when he was assisting a peace officer by pointing out skidmarks at the scene of a car crash. (*Ibid.*) The statute covers a person who assumes the functions and risks of a peace officer, and not one who merely informs a peace officer of facts within his own knowledge. (*Ibid.*) Another case noted in dictum that workers' compensation benefits were granted under section 3366 to the family of a person killed while acting as an undercover agent for police in a narcotics investigation. (*Page v. City of Montebello* (1980) 112 Cal.App.3d 658, 662-665 [family could not enforce in a civil suit a police officer's alleged promise that family would be compensated as if the informant had been a police officer].)

Although not of precedential value, we observe a workers' compensation adjudication held that section 3366 did not afford workers' compensation benefits to a member of a county sheriff's "Mounted Posse Program" for injuries she suffered when she was thrown from her horse during a training session. (*County of Riverside v.*

11

*Workers' Compensation Appeal Board* (2012) 77 Cal.Comp.Cases 1033.) The Program was a volunteer auxiliary group that assisted with such functions as traffic control, crowd management, crime scene protection, dealing with the public, first aid, "eyes and ears" patrols at special events, search and recovery, and appearances at parades and recruiting events. (*Ibid.*) Membership in such a group was not the same as being engaged in assisting law enforcement in an evolving and possibly precarious situation, and at the time of the injury the member was training her horse, not providing any active law enforcement services. (*Ibid.*; see *South Coast Framing, Inc. v. Workers' Compensation Appeals Bd.* (2015) 61 Cal.4th 291, 305, fn. 4 [administrative cases are not of precedential value and persuasive value is debatable].)

The term "active law enforcement" appears in other statutes, where special workers' compensation or retirement benefits are conferred on employees for "active law enforcement service" but with express exclusions for law enforcement employees whose principal duties are, for example, clerical positions such as stenographers and telephone operators.

While interpretation of similar words in other statutes is not controlling, such interpretation is helpful in arriving at legislative intent. (*Estate of Maron* (1986) 183 Cal.App.3d 707, 712-713.) Under the general rules of statutory construction, we may consider judicial interpretation of similar words in other statutes dealing with analogous subject matter. (*Ibid.*)

Here, for example, section 3212.6 affords enhanced benefits for tuberculosis for members of a police department, sheriff's office, Highway Patrol, or district attorney investigators "whose principal duties consist of active law enforcement service . . . excepting those whose principal duties are clerical or otherwise do not clearly fall within the scope of active law enforcement . . . such as stenographers, telephone operators, and other officeworkers . . . ." Section 3212.9 similarly affords enhanced benefits for meningitis for law enforcement employees "whose principal duties consist of active law

12

enforcement service . . . excepting those whose principal duties are clerical or otherwise do not clearly fall within the scope of active law enforcement . . . such as stenographers, telephone operators, and other officeworkers . . . ." Section 4800 gives leave of absence with pay in lieu of lesser disability payments to "members of the Department of Justice whose principal duties consist of active law enforcement and does not apply to persons employed in the Department of Justice whose principal duties are those of telephone operator, clerk, stenographer, machinist, mechanic, or otherwise clearly not falling within the scope of active law enforcement service, even though this person is subject to occasional call or is occasionally called upon to perform duties within the scope of active law enforcement service. . . ."

Section 4850 similarly provides full salary rather than temporary disability payments to law enforcement officers but not to law enforcement employees whose principal duties do not clearly fall within the scope of active law enforcement service. We discussed the meaning of "active law enforcement service" under section 4850 in *Biggers, supra*, 69 Cal.App.4th 431. We there held that courtroom bailiffs are covered by section 4850, which gives full salary in lieu of temporary disability payments to officers and employees of a sheriff's office, *excluding* those " 'whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise, and whose functions do not clearly come within the scope of active law enforcement service. . . .' " (*Id.* at p. 436.) We said the reason for special benefits for policemen and firemen is obvious: " 'not only are their occupations particularly hazardous, but *they undertake these hazards on behalf of the public* [italics added]. The Legislature undoubtedly sought to ensure that policemen and firemen *would not be deterred from zealous performance of their mission of protecting the public by fear of loss of livelihood* [italics added].' (51 Ops.Cal.Atty.Gen. 32, 34 (1968).) [¶] Like police and firefighters, courtroom bailiffs also protect the public, as shown by Biggers' testimony that she had confiscated guns and knives. Their contact with inmates exposes them to hazards. While these hazards may

13

not be as great as those faced by sheriff's deputies on patrol, they are of the same kind and they are distinct from the job hazards faced by clerks, typists, and machinists." (*Id.* at pp. 440-441; italics added.)

*Larkin v. Workers' Compensation Appeals Board* (2015) 62 Cal.4th 152 held that a statute (§ 4458.2) awarding maximum disability benefits to volunteer peace officers, whose service entails risks of great magnitude, does not extend to regularly sworn, salaried peace officers, whose benefits depend on their salary. (*Id.* at p. 163.)

In the retirement context, we held in *Riverside Sheriff's Association v. Board of Administration of California Public Employee Retirement System* (2010) 184 Cal.App.4th 1, that deputy coroners do not qualify for enhanced retirement benefits (Gov. Code, § 20436, subd. (a)), because their principal duties of investigating cause of death "do not involve crime suppression and the arrest and detention of criminals on a regular, as opposed to occasional, basis" and therefore do not "clearly" fall within the scope of "active law enforcement" under that statute. (*Id.* at pp. 4, 8, 13.) Pension statutes are not necessarily coextensive with workers' compensation law. (*Riverside, supra*, at p. 12; see also, *California Horse Racing Board v. Workers' Compensation Appeals Bd.* (2007) 153 Cal.App.4th 1169 [investigator for racing board was not in active law enforcement].)

*Glover v. Board of Retirement* (1989) 214 Cal.App.3d 1327, held that classification of an employee as being engaged in active law enforcement is largely controlled by the extent to which the category exposes its holders to potentially hazardous activity. (*Id.* at p. 1333 [jail cook was not in active law enforcement and was not entitled to presumption that heart attack, not precipitated by any particular incident, was service-connected].)

*Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 578, held that animal control officers did not qualify for enhanced retirement benefits under Government Code section 20020, because the statute excluded employees whose functions did not clearly fall within the scope of active law enforcement service, which

14

contemplates active enforcement and suppression of crimes and the arrest and detention of criminals.

*Amend v. City of Long Beach* (1965) 30 Cal.Comp.Cases 29, held that an employee of a private corporation, who assisted city police as an informant in the arrest of his foreman, was engaged in active law enforcement and therefore entitled to workers' compensation benefits against the city for injuries caused by the foreman after his release. The applicant had contacted police that the foreman was trying to sell a gun that might be stolen. The police "enlisted" the caller to buy the gun with marked money; he did so and turned the gun over to the police. After the foreman was released and attacked the plaintiff, he filed a claim for workers' compensation benefits against the city but was denied on the ground that his active law enforcement service under section 3366 ended when the foreman was arrested. The appeals board reversed, stating, "The duty of the private citizen to assist in the enforcement of law has an ancient history. Section 150 of the California Penal Code makes it a misdemeanor for any male person over the age of eighteen years to refuse to aid in making an arrest, recapturing an escapee, preventing a breach of the peace, or preventing the commission of any other criminal offense. The obvious purpose of the statute in issue is to afford protection to private individuals exposed to the hazards associated with police work (California Law Revision Commission, Reports and Recommendations, February, 1963, pp. 452-453.) [¶] It is our further opinion that active law enforcement does not terminate with the arrest of the suspect. . . . In assisting the police the applicant exposed himself to the risk and peril which is concomitant with active law enforcement. The risk and peril did not end with the arrest of the foreman but continued by reason of the latter's release." (*Amend, supra*, Cal.Comp.Cases at pp. 30-31.)

Thus, "active law enforcement" contemplates that the individual is exposing himself or herself to risks inherent in preventing a crime or breach of peace for protection of the public.

Defendants argue these cases discussing "active law enforcement" simply use the term as a way of identifying the main duties of a peace officer, and here it is undisputed that a deputy sheriff responding to 911 calls is active law enforcement. Therefore, by responding to the 911 call on the deputy's behalf, plaintiffs were engaged in assisting in active law enforcement. We agree with defendants.

To the extent that section 3366 is ambiguous, we consider extrinsic sources of legislative intent for section 3366.

The bill enacting section 3366 was recommended by the California Law Revision Commission, which published a Recommendation relating to Sovereign Immunity, Number 6 - Workmen's Compensation Benefits for Persons Assisting Law Enforcement or Fire Control Officers (January 1963) 6 California Law Revision Commission Report (1963) pages 1505-1507. We grant plaintiffs' request for judicial notice of this report. (*Estate of Joseph* (1998) 17 Cal.4th 203, 210, fn. 1.)

Where the Legislature adopts a Law Revision Commission recommendation without change, we accord the Law Revision Commission Report substantial weight in interpreting the statute. (*Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc*. (2006) 135 Cal.App.4th 1023, 1029.) Here, the Legislature adopted the recommended language with only one change, irrelevant to this appeal, i.e., the enactment excluded independent contractors and their employees from being deemed to be employees of the public entity. (Stats. 1963, ch. 1684, § 2, p. 3306.)

The Law Revision Commission Report stated: "The California Supreme Court has held that a person impressed into law enforcement service under Penal Code section 150 [posse comitatus] is entitled to workmen's compensation benefits as an employee of the law enforcement agency that requested his assistance. [Fn. citing *County of Monterey v. Industrial Acc. Comm'n* (1926) 199 Cal. 221, where sheriff commandeered citizen to help make an arrest.] Later cases have limited this holding by suggesting that workmen's compensation benefits may not be paid if the person assisting in the enforcement of the

16

law receives no compensation for his services [fn. citing *Department of Nat. Resources v. Industrial Acc. Comm'n* (1929) 208 Cal. 14, 17-18, where the person applied and was sworn in as volunteer deputy fish and game warden] or if he has volunteered his services. [Fn. citing *City of Long Beach v. Industrial Acc. Comm'n.* (1935) 4 Cal.2d 624, where an employee of a private detective agency at his employer's instruction assisted police in making an arrest]. . . ."  (6 Cal. Law Revision Com., *supra*, at p. 1505.)

In all of the cases cited by the Law Revision Commission, the persons clearly assumed the risks of law enforcement.

The Law Revision Commission continued:  "When a person not trained in law enforcement or fire suppression is required by law to assume the risk of death or serious injury to provide such protection to the public, or when he undertakes to do so at the request of a peace officer or fire control officer, he and his dependents should be provided with protection against the financial consequences of his death or injury.  The Commission, therefore, recommends that the benefits of the Workmen's Compensation Act be extended to cover cases where a person is killed or injured while engaged in the performance of active law enforcement or fire suppression service, whether he does so because he is required by law to do so or because he is requested to do so by a peace officer or fire control officer."  (6 Cal. Law Revision Com., *supra*, at p. 1505.)  "In some states, local entities are civilly liable, without regard to negligence, for all damages resulting from the death or injury of a person impressed into law enforcement service. The Commission believes that it is better policy to extend to such persons the same benefits and protections that are provided to peace officers generally."  (*Id*. at p. 1505, fn. 4.)

The above-quoted portion shows a balance between protecting government entities against open-ended tort liability, while protecting volunteers against the financial consequences of death or injury

17

We agree Corporal Whitman would have been performing "active law enforcement service" if he himself had gone to the 911 caller's home to check on her. Plaintiffs knew they were responding to a 911 call, and therefore they were assisting in active law enforcement. Although the deputy misrepresented that the 911 call was *likely* weather-related and omitted facts suggesting potential criminal activity, the deputy's misrepresentations and omissions are irrelevant to our construction of the statute at issue here. All that matters is that plaintiffs knew they were responding to a 911 call, the nature of which was not certain.

We conclude plaintiffs were engaged in assisting in active law enforcement at the deputy's request, and their remedy was worker's compensation under section 3366. We express no view on plaintiffs' pending federal lawsuit alleging civil rights violations, which was stayed pending resolution of the state court litigation. (*Gund v. County of Trinity, supra*, 2013 WL 3942030; 2013 U.S. Dist. LEXIS 106823.)

## DISPOSITION

The judgment is affirmed. Plaintiffs shall pay defendants' costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

         HULL          , J.

We concur:

     BLEASE      , Acting P. J.

     RENNER      , J.

18